**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOEVANNIE SOLIS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>LATIUM NETWORK, INC., DAVID JOHNSON, and MATTHEW CARDEN,<br><br>Defendants. | Case No: 18-10255 (SDW) (SCM)<br><br><br>**OPINION**<br><br><br>December 10, 2018 |

**WIGENTON,** District Judge.

Before this Court is Defendants Latium Network, Inc. ("Latium"), David Johnson ("Johnson"), and Matthew Carden's ("Carden") (collectively, "Defendants") Motion to Dismiss Plaintiff Joevannie Solis' ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Defendants Johnson and Carden (collectively, the "Individual Defendants") are the co-founders of Defendant Latium, a privately-held Delaware corporation that operates a "blockchain-based tasking platform[.]" (Compl. ¶¶ 7-9, 25, ECF No. 1.) As advertised, Latium allows users "to create tasks, select the desired applicants, verify that a task has been completed to specified

standards, and pay with Latium's own cryptocurrency[,]" known as Latium X ("LATX") tokens. (*Id*. ¶¶ 1, 25.)

Between approximately July 25, 2017 and March 1, 2018, Defendants conducted an initial coin offering ("ICO") during which time LATX tokens were marketed and sold in limited supply. (*Id.* ¶¶ 1, 15, 28, 36.) The ICO was conducted in multiple stages, including: (i) a private presale; (ii) a limited whitelist sale; and (iii) a general sale. (*Id.* ¶¶ 37-42.) The stages were allegedly "designed to entice and reward early investments." (*Id.* ¶ 43.) Investors purchased LATX tokens with either U.S. dollars or the cryptocurrency "Ether." (*Id.* ¶ 17.) As a result of the ICO, Defendants received over $17 million. (*Id.* ¶ 15.)

Plaintiff participated in the ICO and electronically transmitted $25,000 to Defendants in exchange for 208,333.33 LATX tokens on January 12, 2018. (*Id.* ¶ 50.) On June 6, 2018, Plaintiff filed a two-count, putative class action alleging that Defendants violated the Securities Act of 1933 by offering and selling unregistered securities in the form of LATX tokens. (*See generally id*.) On August 21, 2018, Defendants filed the instant Motion to Dismiss the Complaint. (ECF No. 16.) On September 17, 2018, Plaintiff opposed the motion, and on September 24, 2018, Defendants replied. (ECF Nos. 18-19.)

## II.   LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of*

*Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

#### A. Claim Against Defendant Latium (Count One)

The Securities Act of 1933 (the "Act") was enacted "to eliminate serious abuses in a largely unregulated securities market." *United Hous. Found. v. Forman*, 421 U.S. 837, 849 (1975). To that end, Section 5 of the Act prohibits the unregistered offer or sale of securities, 15 U.S.C. §§ 77e(a), (c), and Section 12(a)(1) creates a private cause of action against parties who offer or sell securities in violation of Section 5, 15 U.S.C. § 77l(a)(1). *See Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 654 (D.N.J. 2009).

"[T]o bring suit under federal securities laws, an investor must show that the interest in question is a 'security[.]'" *Rossi v. Quarmley*, 604 F. App'x 171, 173 (3d Cir. 2015) (citing *Steinhardt Grp. Inc. v. Citicorp*, 126 F.3d 144, 150 (3d Cir. 1997)). Under the Act, "security" is defined as, *inter alia*, an "investment contract." 15 U.S.C. § 77b(a)(1). In *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), the Supreme Court defined an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." As set forth in *Howey*, "the three requirements for establishing an investment contract are: (1) an investment of money, (2) in a common enterprise, (3) with profits to come solely from the efforts of others." *Steinhardt*, 126 F.3d at 151 (internal quotations omitted) (citing *Howey*, 328 U.S. at 301).

Here, Plaintiff alleges that the LATX tokens are investment contracts, and therefore should have been registered as securities. (*See* Compl. ¶¶ 66-81.) Defendants acknowledge that the first prong of the *Howey* test is satisfied because participants in Latium's ICO invested either U.S. dollars or Ether to purchase LATX tokens. (*Id.* ¶ 67; *see also* Defs.' Moving Br. at 2, 11 n.1, ECF No. 16-1.) Therefore, this Court will focus on the remaining two prongs of the *Howey* test.

A common enterprise can be established by showing "horizontal commonality," which "is characterized by a pooling of investors' contributions and distribution of profits and losses on a pro-rata basis among investors." *U.S. S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 187-88 (3d Cir. 2000) (internal quotation marks omitted) (quoting *Steinhardt*, 126 F.3d at 151).[1] Plaintiff alleges that the funds raised through Latium's ICO were pooled to develop and maintain Latium's tasking platform, and "allocated as follows: 40% development, 30% marketing, 15% security, 10%

---

[1] The Third Circuit has declined to address whether a common enterprise can also be established through "vertical commonality," which "focuses on the community of interest between the individual investor and the manager of the enterprise." *Infinity Grp. Co.*, 212 F.3d at 187 n.8.

4

operations, and 5% legal." (Compl. ¶ 102.) He also alleges that "[a]n investor's return on a Latium ICO investment . . . is directly proportional to the amount of an investor's financial stake and number of LATX tokens owned." (*Id.* ¶ 103.) At this early stage of litigation, Plaintiff has sufficiently pled the existence of horizontal commonality. *See, e.g.*, *United States v. Zaslavskiy*, No. 17-cr-647, 2018 WL 4346339, at *6 (E.D.N.Y. Sept. 11, 2018) (finding that profits would be distributed pro-rata "given that investors were promised 'tokens' or 'coins' in exchange for, and proportionate to, their investment interests in the schemes").

The third prong of the *Howey* test requires that investors must be "attracted to the investment by the prospect of a profit on the investment rather than a desire to use or consume the item purchased." *Steinhardt*, 126 F.3d at 152 (citing *Forman*, 421 U.S. at 853-54); *see also S.E.C. v. Edward*, 540 U.S. 389, 394 (2004) (explaining that "profits" refers to income or return, including "the increased value of the investment"). Additionally, those profits must be derived "solely from the efforts of others," *Steinhardt*, 126 F.3d at 153, thereby "separat[ing] passive investments from active, participatory interests in businesses," *Rossi*, 604 F. App'x at 173 (quoting *Goodwin v. Elkins & Co.*, 730 F.2d 99, 114 (3d Cir. 1984)).

Notwithstanding the functionality of the LATX tokens (i.e., to pay for labor on Latium's platform), the Complaint details myriad ways in which "Defendants led investors . . . to expect a profit from the purchase of LATX tokens." (Compl. ¶ 69.) For example, Defendants' promotional materials, advertising methods, and public statements stressed the limited supply of tokens, and referred to Latium's ICO as a "unique investment opportunity" that would "generate better financial returns[.]" (*Id.* ¶¶ 30-31, 69-71, 73.) Additionally, Latium published a White Paper advising that the tokens would be "used to compensate its executives with equity in the company." (*Id.* ¶¶ 113, 116.) Furthermore, Plaintiff asserts that during the ICO, Latium's "platform had only

5

limited functionality, and . . . had not been launched for public use." (*Id.* ¶ 75.) These factual allegations support the inference that Plaintiff purchased LATX tokens with the expectation of profit rather than as a means of using the tasking platform.

When analyzing whether profits were expected to come "solely from the efforts of others," courts have explained that "solely" is not to be read literally. *Lino v. City Investing Co.*, 487 F.2d 689, 692 (3d Cir. 1973). Thus, "an investment contract can exist where the investor is required to perform some duties, as long as they are nominal or limited and would have little direct effect upon receipt by the participant of the benefits promised by the promoters." *Id.* (internal quotation marks omitted); *see also Steinhardt*, 126 F.3d at 153. Here, Plaintiff avers that he and other investors were completely dependent on Defendants to market the ICO, raise funds to finance the tasking platform, manage those funds, develop and build the tasking platform, market the platform, maintain LATX's listing on cryptocurrency exchanges for active trading, and ultimately maintain the platform. (Compl. ¶¶ 76-80.) "Investors in the Latium ICO have no power or control over their investments once they hand their payment over to Defendants." (*Id.* ¶ 81.) Thus, Plaintiff has adequately alleged that any potential return on his investment in LATX tokens would have primarily resulted from Defendants' efforts.

Accepting the facts in the Complaint as true and giving Plaintiff the benefit of all reasonable inferences in the light most favorable to him, this Court concludes that Plaintiff has sufficiently alleged that LATX tokens are investment contracts under the *Howey* test. Because the LATX tokens were never registered with the Securities and Exchange Commission, (Compl. ¶¶ 106-07), Plaintiff may maintain a cause of action against Latium under Section 12 of the Act. Defendants' arguments to the contrary are better suited to support a motion for summary judgment.

B. <u>Claim Against Individual Defendants (Count Two)</u>

Pursuant to Section 15 of the Act, one who controls a violator of Section 12 is subject to joint and several liability. 15 U.S.C. § 77o(a). To sustain a claim against a "controlling person," a plaintiff must establish that "one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities laws." *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006) (citing *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 344 (3d Cir. 1999)); *see also In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 367 (D.N.J. 1999) ("'[H]eavy consideration' should be given 'to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof.'" (quoting *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890-91 (3d Cir. 1975))).

As discussed above, Plaintiff has adequately pled his Section 12 claim against Latium. Plaintiff further alleges that as co-founders and c-suite officers of the alleged primary violator, the Individual Defendants "had the power to influence and control . . . Latium's conduct in offering the LATX token for sale[.]" (Compl. ¶¶ 112-18.) Considering their positions and public statements during Latium's ICO, (*id*. ¶¶ 8-9, 70-71, 73), Plaintiff has set forth enough facts to maintain a controlling person claim against the Individual Defendants. *See, e.g.*, *Dutton v. Harris Stratex Networks, Inc.*, 270 F.R.D. 171, 179 (D. Del. 2010) (finding that allegations concerning the positions of the Section 15 defendants and their involvement in the financial reporting of the primary violator were "sufficient to give rise to an inference of control"); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 72 (D. Del. 2002) (concluding that controlling person liability claims were sufficiently pled because underlying securities violations were adequately alleged).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**. An appropriate Order follows.

                                                s/ *Susan D. Wigenton*_____
                                                **SUSAN D. WIGENTON**
                                                **UNITED STATES DISTRICT JUDGE**

Orig:        Clerk
cc:          Steven C. Mannion, U.S.M.J.
              Parties